IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ASHTON DANIEL, R69925, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| J. PETERSON, DANIEL MONTI, CHRISTINE VINEYARD, LT. of IA ROBINSON, BOLING TAYLOR, MHP MURRAY, D. WILLIS, PAIGE FLEEMAN, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 24-cv-1512-DWD

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Ashton Daniel, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Centralia Correctional Center (Centralia), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that Defendant J. Peterson used excessive force against him, other defendants refused to offer aid, he was placed improperly on crisis watch and hunger strike, and the incidents were not properly investigated. Plaintiff initiated this action by filing a Motion for a Preliminary Injunction (Doc. 1), which the Court denied (Doc. 5). He then filed a timely Complaint (Doc. 11), as well as miscellaneous motions and a "supplement" (Doc. 18).

Plaintiff's Complaint (Doc. 11) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b).  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

Plaintiff alleges that on May 9, 2024, while being escorted to investigation status, Defendant J. Peterson used excessive force against him by repeatedly yanking on handcuffs that were already extremely tight.  (Doc. 11 at 7).  He claims he suffered possible nerve damage to his left shoulder and lacerations to both wrists.  Plaintiff alleges that since the incident with Peterson, he has learned Peterson has a history of assaulting inmates.  (Doc. 11 at 17).  He mentions a desire to conduct discovery about prior incidents.  (*Id.*).

Eventually he was escorted to the healthcare unit where he informed the nurse that his handcuffs were extremely tight and were still causing severe pain.  (Doc. 11 at 7).  He alleges the nurse refused to treat or document his injuries.  He was then escorted to his housing location where his handcuffs were loosened upon request.  He claims he was denied treatment for his shoulders and wrists.

Plaintiff claims he requested a consultation with mental health staff because he was experiencing anxiety and depression after the assault. (Doc. 11 at 8). He informed staff that they were not following Centralia's rules about mental health requests, to no avail. However, about 30 minutes later a major told him he would be taken to speak to mental health, and he was directed to cuff-up. Instead of consulting with mental health, Plaintiff claims he was involuntarily placed on crisis watch and was told he would speak to mental health the next day.

The next day he informed Defendant Murray (a mental health provider) that he had been placed on crisis watch without telling anyone that he intended to hurt himself. Murray remarked that it was strange he would be put on crisis watch without a face-to-face consultation, but she indicated she had no authority to change his situation. (Doc. 11 at 8). In an attached memorandum, Plaintiff faults Murray and Defendant Boling Taylor for placing him on involuntary crisis watch. (Doc. 11 at 11). He also says Murray and Boling told him that Defendant Paige Fleeman had the "last say so concerning crisis watch placement." (Doc. 11 at 12). Plaintiff takes issue with the crisis placement being made without face-to-face contact or the completion of the appropriate form. (Doc. 11 at 15). He claims he remained on crisis watch improperly for 8 days in violation of Administrative Directives and the Eighth Amendment. (Doc. 11 at 16). He also claims he tried to request his mental health records to support his claims that this placement was improper, but he was not given complete records. (Doc. 11 at 16).

While on crisis watch, Plaintiff claims that Defendant D. Willis prepared a hunger strike declaration on his behalf, which forced him to miss meals for three days. In the

attached memorandum, Plaintiff additionally faults Defendants Vineyard and Monti for signing off on his hunger strike. He also faults non-parties Dr. Raita and Amy Dalby. (Doc. 11 at 11). Plaintiff alleges that the documentation surrounding the hunger strike contained false information that could be contradicted by video footage. (Doc. 11 at 18).

On May 14, 2024, Plaintiff was treated for his wrist lacerations, and he spoke to Defendant Lt. Robinson about the incident with Peterson. (Doc. 11 at 9). He showed Robinson his injuries, but he would not take photos of them. Plaintiff claims this amounted to an insufficient investigation. He explains that no probable cause was determined, and he was released back to general population.

Plaintiff explains in an attached memorandum that he submitted an emergency grievance about the incident with Peterson. (Doc. 11 at 14). He claims that a non-party responded that internal affairs could not substantiate his claims of excessive force, and Monti then concurred with this finding. He claims these findings were unsupported and can be contradicted by eyewitnesses. (Doc. 11 at 14). He also explains that on June 25, 2024, he got a letter from Defendant Monti stating that the incident had been investigated and it was determined minimal force was used. He argues these findings can be contradicted. (Doc. 11 at 14-15).

Plaintiff seeks monetary compensation. He attached a copy of an ibuprofen prescription to his complaint, one-page of medical records, a single mental health record, grievance documents about the incident with J. Peterson, and the letter from Warden Monti about the incident. The letter indicates that a full investigation was conducted,

including the review of video footage, and it was determined staff used minimal force to counteract Plaintiff's combative nature. (Doc. 11 at 26).

Plaintiff moved to supplement his complaint under Federal Rule of Civil Procedure 15(d). (Doc. 18). He alleges that though he faulted Paige Fleeman for ultimately authorizing his placement on crisis watch, he has now learned it was actually Dr. Reister who authorized the placement. (Doc. 18 at 1). In support, he supplied a crisis watch designation form signed by Reister. (Doc. 18 at 5). He asks to dismiss Fleeman, and to add Dr. Reister.

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:** **Eighth Amendment excessive force claim against Defendant J. Peterson for yanking on Plaintiff's handcuffs on May 9, 2024, causing severe shoulder pain and lacerations on both wrists;**
>
> **Claim 2:** **Eighth Amendment claim against Defendant Willis for placing Plaintiff on a hunger strike that he did not request, leading to the deprivation of food for 3 days;**
>
> **Claim 3:** **Eighth Amendment deliberate indifference claim against Defendants Dr. Reister, Murray and Boling Taylor for Plaintiff's involuntary crisis watch placement;**

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## **Preliminary Dismissals**

Plaintiff's request to dismiss Defendant Paige Fleeman as part of his Motion to Supplement (Doc. 18) is **GRANTED** and Fleeman will be dismissed without prejudice.

Plaintiff faulted Defendants Monti and Vineyard for signing off on his hunger strike paperwork, but there is no indication that when reviewing the document, they had knowledge he did not request the hunger strike. Without personal knowledge that the hunger strike was falsely declared, there is no indication Monti or Vineyard could have known to act differently or that they knew they were doing something harmful to Plaintiff in processing the document. Accordingly, the Court finds that Plaintiff has failed to demonstrate sufficient personal responsibility of Monti or Vineyard for violating Plaintiff's rights, and they will be dismissed without prejudice.

Plaintiff also names Defendant Robinson in association with his role as an interviewer for an internal affairs investigation. He claims Robinson saw and recorded his injuries but refused to take pictures of them. However, he also explains that the investigation ultimately concluded claims were unsubstantiated and he was released to general population. Against this backdrop, it is not clear that Robinson took any action that violated Plaintiff's rights or caused him any harm. Robinson will be dismissed without prejudice for failure to state a claim.

## Analysis

### Claim 1

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). While the Court will also consider the extent of the injury suffered in the use of force, there is no severity of injury benchmark to state an excessive force claim. *Id.*

Plaintiff alleges that Peterson yanked Plaintiff to his knees with extremely tight handcuffs, which caused him to yell and scream for help. Mere moments later, Peterson whispered in his ear that he would permanently damage his shoulder and yanked him back to his feet. Plaintiff claims the yanking process was repeated three times, causing lacerations to both wrists and possible nerve damage to his left shoulder. This description could support a finding of malicious and sadistic intent. However, the Court also notes that the letter from Warden Monti attached to the complaint describes a thorough investigation, including a review of video footage, which reached the conclusion that minimal force was applied to restore order due to Plaintiff's own combative behavior. At this earliest juncture in the case, the Court must read Plaintiff's pleading broadly in his favor, but it is at least important to acknowledge that Plaintiff's own supporting documentation casts serious doubt on his own account of the events. Claim 1 may proceed at this juncture.

**Claim 2**

Plaintiff alleges that Defendant Willis placed him on a hunger strike that he did not request, which resulted in three days without food. An Eighth Amendment violation occurs if a prisoner is denied an "identifiable need such as food." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir.1999) (*citing Wilson v. Seiter*, 501 U.S. 294, 304, (1991)). Although "[o]ne or two missed meals are not actionable as Eighth Amendment violations," an inmate who misses more than two meals may be able to show a constitutional violation. *Curiel v. Stigler*, 2008 WL 904894, *5 (N.D. Ill. Mar. 31, 2008); *Reed*, 178 F.3d at 853 & 856 (denial of food for three to five days at a time created a genuine issue of material fact as to an inmate's Eighth Amendment claim); *see Simmons v. Cook*, 154 F.3d 805, 806 n. 6 (8th Cir.1998) (upholding judgment against Defendants when inmate was not allowed to eat for thirty-two hours). Courts must assess the amount of food an inmate was deprived as well as the duration of the deprivation when determining whether an Eighth Amendment violation may have occurred. *Reed*, 178 F.3d at 853. Here, Plaintiff claims he was deprived of all food for three days, so at this early juncture he may proceed against Willis for this issue.

**Claim 3**

Although piecemeal amendments are generally not allowed, Plaintiff's Motion (Doc. 18) under Federal Rule of Civil Procedure 15(d) is proper where he seeks to replace a defendant he now admits he mis-identified. Defendant Paige Fleeman will be terminated, and Defendant Dr. Reister will be added.

Plaintiff faults Defendants Dr. Reister, Murray and Boling Taylor for allowing him to be placed on involuntary crisis watch. He explains that Murray told him he should have been evaluated face-to-face before being placed on watch, and that the form used to initiate crisis watch was not properly completed. He also indicates Administrative Directives were not followed. The failure to follow the prison's own internal policies, or IDOC-wide policies does not give rise to a claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, or prison regulations or policies).

The situation must also be assessed in relation to the broader context of the complaint. Plaintiff alleged that at the time he was placed on crisis watch, he was repeatedly requesting to be seen by mental health. Ultimately, other than the possible hunger strike issue, Plaintiff does not identify any harm that befell him by a short 8-day stay in crisis watch status. Inmates do not have a protected liberty interest in any particular classification or housing placement, and Plaintiff does not say anything about crisis watch that makes it seem the placement was abnormally harsh. *See, e.g., Tomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property [interests] in their classifications and prison assignments") (internal citations omitted); *Henderson v. Schwochert*, 2019 WL 5069003, at *6 (E.D. Wis. Oct. 9, 2019) ("Prisoners do not have a constitutional right to be assigned to a particular prison, security classification, or housing assignment"); *Bradley v. Wexford, Inc.*, 2019 WL 3033675, at *6 (S.D. Ill. July 11, 2019) ("An inmate does not have a protected interest in a particular

classification"). As such, the Court finds that Plaintiff's allegations about his crisis watch placement against Dr. Reister, Murray, and Boling Taylor are insufficient to state a claim.

## Miscellaneous Motions

Plaintiff's Motion for Service of Process at Government Expense (Doc. 13) is **GRANTED** because he qualified for IFP status.

Plaintiff's Motion for Deposit (Doc. 15) is **DENIED**. In the Motion, Plaintiff explains that upon his birth, and per various federal statutes and Acts, the state collected $1,000,000 by the issuance of his birth certificate. He has submitted his birth certificate to the Court and posits that via various federal rules and the Code of Federal Regulations, he should be able to make a deposit to the Court for the value of the $350.00 filing fee. These arguments are easily discernible as consistent with the sovereign citizen movement. The main tenets of sovereign citizen beliefs are more fully explained in *In Re Peterson*, 604 B.R. 751, 761 at n.2 (E.D. Wisc. July 9, 2019) (explaining that sovereign citizens believe a birth certificate or a physical body can is monetized by the government, and that knowledgeable citizens can redeem funds associated with their person by manipulating accounts and instruments). Suffice it to say, the Court finds Plaintiff's effort to satisfy the $350 fee in this case by tendering his birth certificate unavailing, and the sort of theory that should be "summarily rejected, however presented." *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) (sovereign citizen like rhetoric and arguments should be summarily rejected).

Plaintiff's Motion for Status on his Motion for Deposit (Doc. 17) is **MOOTED** by the ruling on the underlying motion.

## Disposition

**IT IS HEREBY ORDERED THAT** Plaintiff's Motion to Supplement (Doc. 18) is **GRANTED**, and Defendant Dr. Reister shall be added. The Clerk of Court is **DIRECTED** to **ADD** Dr. Reister as a defendant.

**Claim 1** of the Complaint (Doc. 1) survives against Defendant J. Peterson and **Claim 2** survives against Defendant D. Willis. By contrast, Plaintiff has failed to state a claim in **Claim 3**, and he has failed to state any valid claims against Defendants Daniel Monti, Christine Vineyard, Lt. of IA Robinson, Boling Taylor, MHP Murray, Paige Fleeman and Dr. Reister. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Monti, Vineyard, Robinson, Taylor, Murray, Fleeman and Reister for failure to state a claim.

The Clerk of Court is **DIRECTED** to prepare for Defendants J. Peterson and D. Willis: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 11), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not

known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 13) is **GRANTED**, his Motion for Deposit (Doc. 15) is **DENIED**, and his Motion for Status (Doc. 17 is **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

Dated: August 16, 2024

DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.